UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| CLIFFORD JOSEPH CONNEIGHTON,<br><br>    Plaintiff<br><br>v.<br><br>EMERY MARTIN USA LLC;<br>CHR GROUP USA INC.;<br>BETSY EMERY MARTIN, and<br>PETER CLARK<br><br>    Defendants. | Civil Action No.: 1:15-cv-00133-PB |

## FIRST AMENDED COMPLAINT

1. The Plaintiff Clifford Conneighton ("Mr. Conneighton") requests a jury trial on all claims and defenses for which he is entitled to a jury trial.

### The Parties

2. Mr. Conneighton is an individual with a residence address of 53 Depot Road, Hollis, New Hampshire 03049.

3. Defendant Emery Martin USA LLC ("EmeryMartin") is a New York limited liability company. EmeryMartin's principal place of business is 333 Seventh Avenue, 6th Floor, New York, NY 10001.

4. Defendant CHR Group USA Inc. ("CHR") is a New York corporation. On information and belief, CHR's principal place of business is 333 Seventh Avenue, 6th Floor, New York, NY 10001. However, the address provided by New York's Department of State Division of Corporations is 420 West 43rd Street, Suite 30A, New York, NY 10036.

5. Defendant Betsy Emery Martin ("Ms. Emery Martin"), President of EmeryMartin and the Digital Chairman of CHR, is an individual with a last known residential address of 10416 Konstantine Lane, Loveland, Ohio 45140-6693.

6. Defendant Peter Clark ("Mr. Clark"), Chief Executive Officer of CHR, is an individual with a last known residential address of 420 West 43rd Street, Suite 30A, New York, NY 10036.

### Jurisdiction and Venue

7. Jurisdiction is proper because the acts complained of herein arise out of the Defendants' employment of and retention of Mr. Conneighton as an independent contractor in New Hampshire.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

### Facts Common to All Counts

9. Mr. Conneighton has, during his career, worked as an executive at several technology companies and also as an independent consultant at the rate of $2,000 per day plus expenses.

10. In June 2014, Mr. Conneighton left the company he was employed by and began working as an independent consultant.

11. Later in 2014, Ms. Emery Martin contacted Mr. Conneighton about doing work for her company, EmeryMartin. She explained to Mr. Conneighton that EmeryMartin had recently been acquired by CHR and that they could use help from a consultant like him.

12. After Mr. Conneighton met twice with Ms. Emery Martin and CHR's principals, including Chris Clarke, CHR Senior Vice President for Corporate Development, it was agreed that Mr. Conneighton would be engaged as an independent contractor, beginning on October 2,

2014.  The parties agreed that Mr. Conneighton would be paid at the rate of $2,000 per day plus travel expenses.

13.     After performing work on that independent contract basis for some time for both EmeryMartin and CHR, the Defendants repeatedly praised Mr. Conneighton's work and asked Mr. Conneighton to join them as a full-time employee.

14.     The parties engaged in negotiations regarding the terms of such employment, exchanging several drafts of a term sheet and an offer letter, with each party, including representatives of CHR, suggesting certain changes.  At Ms. Emery Martin's direction, many of Mr. Conneighton's communications with the Defendants regarding such terms were with Mr. Clarke and with Mike Giammusso, CHR Director of Finance. After Mr. Clarke, Mr. Giammusso, and Mr. Clark all approved terms of the contract, a final agreement was reached, with Mr. Giammusso e-mailing Mr. Conneighton that, "I am fine with the changes you proposed as Betsy is in alignment as well."

15.     Both Ms. Emery Martin and Mr. Conneighton signed a final version of that offer letter, with Mr. Conneighton's employment to begin December 1, 2014, with his title to be Chief Strategy Officer.

16.     Among other things, the agreement was that Mr. Conneighton would be paid $20,000 per month, with an additional bonus potential.  Further, the agreed terms included a severance clause that provides, in the event Mr. Conneighton's employment is terminated without cause, he shall be paid "a lump sum equal to six months base pay plus bonus at 100% achievement pro-rated to the date of termination plus six months."

17.     The offer letter also provided that Mr. Conneighton's "employment will be based in New Hampshire."

18. Mr. Conneighton's work continued to be for both CHR and EmeryMartin. Much of that work was for CHR's broad interests and was directed by Mr. Clark.

19. In fact, throughout their dealings with Mr. Conneighton, EmeryMartin and its parent company CHR operated as a single integrated enterprise, including repeatedly acknowledging that his employment was with CHR. Among other things:

   a. The Defendants considered how to describe Mr. Conneighton's role. Ultimately, based on a CHR's employee's concern that "Cliff's press release reads like he's kinda replaced me" and not based on any consideration of Mr. Conneighton's job duties and responsibilities, the Defendants settled on a press release titled, "The CHR Group Hires Digital E-Commerce Pioneer Conneighton as Chief Strategy Officer of its EmeryMartin Division."

   b. The entities share common ownership (CHR is the sole member of EmeryMartin) and common management with, for example, Ms. Emery Martin serving simultaneously as both President of EmeryMartin and the Digital Chairman of CHR. In fact, for a period of time, Ms. Emery Martin also represented herself to be simultaneously the President of EmeryMartin and the President and Digital Chairman of CHR. CHR employees serve in multiple management roles at EmeryMartin, including managing financial and human resources functions.

   c. CHR's and EmeryMartin's operations are inextricably interrelated, with a centralization of personnel, human resources, financial, and administrative functions; with company-wide policies applicable to both CHR and its subsidiary EmeryMartin; and with shared facilities.

4

      d. CHR had substantial control over Mr. Conneighton's employment, including in the decision to hire him, the negotiation of the terms of his employment, the assignment of his work tasks during the course of his employment, and the decision not to pay him.

      e. CHR led Mr. Conneighton to reasonably believe that he was being hired by CHR and that belief continued throughout his time working for the Defendants. Among other things, in addition to performing work for CHR directly and for EmeryMartin, Mr. Conneighton also performed work for other divisions of CHR, as if all divisions were simply part of a single company.

20. In short, CHR and EmeryMartin are not separate entities but, rather, divisions or departments of a single enterprise.

21. Mr. Conneighton billed the Defendants a total of $68,421.56 in consulting fees and travel expenses for the work completed before he became an employee on December 1.

22. In December 2014, the Defendants paid Mr. Conneighton $20,000 toward the total due for the consulting fees and travel expenses, promising Mr. Conneighton that the balance was coming and delayed only due to cash flow issues. Among other promises, Mr. Clark (CEO of CHR) assured Mr. Conneighton that all money due to him would be paid by December 31, 2014. On December 12, 2014, Mr. Giammusso (CHR Director of Finance) also promised that all outstanding money due would be paid by December 31, 2014, and that Mr. Conneighton's salary going forward would be paid bi-monthly. Ms. Emery Martin, Mr. Giammusso, and Mr. Clark all assured Mr. Conneighton that he would be paid despite EmeryMartin being short on funds because CHR would provide the money to EmeryMartin to pay him. On January 6, Mr. Conneighton informed Mr. Clark and Ms. Emery Martin that he had not been paid as so

promised. Mr. Clark acknowledged that Mr. Conneighton was due money for the consulting work and a payroll deposit for January.

23. Despite these assurances, neither CHR nor EmeryMartin ever intended to pay Mr. Conneighton. In fact, CHR directed EmeryMartin to "hold off" on paying Mr. Conneighton and withhold Mr. Conneighton's paycheck to meet its other cash flow needs first.

24. No further payment has been made to Mr. Conneighton.

25. Moreover, Mr. Conneighton has been paid no wages for the time that he was employed by the Defendants. Again, the Defendants promised to pay, telling Mr. Conneighton that the only reason he had not yet been paid was due to their cash flow problems. In fact, CHR and EmeryMartin specifically withheld Mr. Conneighton's paychecks, while simultaneously paying other employees and satisfying other financial obligations.

26. After multiple demands for the money due to him, Mr. Conneighton informed the Defendants that their failure to pay him would force him to leave his job effective February 13, 2015. No payments were forthcoming and Mr. Conneighton was, indeed, forced to leave his employment on February 13.

### Count I: Breach of Contract (Consulting Fees and Expenses) (CHR and EmeryMartin)

27. Mr. Conneighton incorporates the allegations above as if set forth fully herein.

28. CHR and EmeryMartin entered into a valid and binding agreement with Mr. Conneighton concerning his work as an independent contractor for them.

29. Mr. Conneighton has fully performed all of his obligations under the parties' agreement.

30. Despite repeated demands, the Defendants have not paid the consulting fees and travel expenses due to Mr. Conneighton pursuant to the agreement.

6

31. The Defendants' failure to comply with their obligations under the agreement constitutes a breach of that agreement.

32. The Defendants have acted in bad faith, vexatiously, wantonly, or for oppressive reasons. It should have been unnecessary for Mr. Conneighton to bring this action to recover the amounts due.

33. As a direct and proximate result of the Defendants' breach, Mr. Conneighton has suffered damage, entitling him to rightful compensation, plus incidental and consequential damages, plus costs, interest and attorneys' fees, plus such other relief as Mr. Conneighton is entitled to receive, all in an amount to be proven at trial and within the jurisdictional limits of this Court.

### Count II: Wage Claim
### (All Defendants)

34. Mr. Conneighton incorporates the allegations above as if set forth fully herein.

35. The Defendants employed Mr. Conneighton pursuant to terms outlined in a fully executed offer letter.

36. Mr. Conneighton commenced employment effective December 1, 2014, pursuant to that agreement.

37. The Defendants have, despite repeated demand, failed to pay Mr. Conneighton wages due for December, January, and February.

38. The agreement also provided for a payment of severance to Mr. Conneighton in the event his employment was terminated without cause.

39. Withholding his wages for no good reason, the Defendants deliberately made Mr. Conneighton's working conditions intolerable, eventually resulting in a constructive discharge, in which Mr. Conneighton reasonably felt compelled to leave his job.

40. Mr. Conneighton has not been paid the severance amount, which constitutes further wages due.

41. Both individual defendants, Betsy Emery Martin and Peter Clark, officers and agents of EmeryMartin and CHR, knew that Mr. Conneighton was owed wages and, yet, permitted EmeryMartin and CHR not pay him the amounts due.

42. Because the Defendants' failure to pay wages due was willful, without good cause, and without a good faith basis to believe that the underpayment was in compliance with the law, Mr. Conneighton is entitled to liquidated damages in the amount equal to the unpaid wages.

43. Pursuant to statute, Mr. Conneighton is also entitled to recover the costs of the action and his reasonable attorneys' fees.

### Count III: Breach of Contract (Monthly Wages and Severance) (EmeryMartin)

44. Mr. Conneighton incorporates the allegations above as if set forth fully herein.

45. EmeryMartin entered into a valid and binding agreement with Mr. Conneighton concerning his work as an employee for the company.

46. Mr. Conneighton has fully performed all of his obligations under the parties' agreement.

47. Despite repeated demands, EmeryMartin has not paid the money due to Mr. Conneighton pursuant to the agreement, including monthly wages and severance.

48. EmeryMartin's failure to comply with its obligations under the agreement constitutes a breach of that agreement.

49. EmeryMartin has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. It should have been unnecessary for Mr. Conneighton to bring this action to recover the amounts due.

50. As a direct and proximate result of EmeryMartin's breach, Mr. Conneighton has suffered damage, entitling him to rightful compensation, plus incidental and consequential damages, plus costs, interest and attorneys' fees, plus such other relief as Mr. Conneighton is entitled to receive, all in an amount to be proven at trial and within the jurisdictional limits of this Court.

### Count IV: Misrepresentation (Monthly Wages and Severance) (CHR)

51. Mr. Conneighton incorporates the allegations above as if set forth fully herein.

52. As detailed above, CHR repeatedly represented to Mr. Conneighton that, he would be fully paid, even stating that, if EmeryMartin did not have the cash flow available, CHR would fund the payments.

53. CHR made such representations with knowledge of their falsity or, at least, with a conscious indifference to their truth.

54. CHR made such representations with the intention that Mr. Conneighton would rely on them.

55. Mr. Conneighton did justifiably rely on those representations by, among other things, agreeing to become an employee of the Defendants and by continuing to work for the Defendants despite the fact that he had not been paid for previous work, acting on the reasonable belief that he would be paid for his work by either or both of CHR and EmeryMartin, as represented.

56. CHR has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. It should have been unnecessary for Mr. Conneighton to bring this action to recover the amounts due.

57. As a direct and proximate result of CHR's misrepresentations, Mr. Conneighton has suffered damage, entitling him to rightful compensation, plus incidental and consequential damages, plus costs, interest and attorneys' fees, plus such other relief as Mr. Conneighton is entitled to receive, all in an amount to be proven at trial and within the jurisdictional limits of this Court.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

A. Award Plaintiff overdue consulting fees and expenses;

B. Award Plaintiff unpaid monthly wages;

C. Award Plaintiff unpaid severance;

D. Award Plaintiff liquidated damages in the amount of the unpaid wages;

E. Award Plaintiff the attorneys' fees he has incurred and will incur in this matter;

F. Award Plaintiff the costs he has incurred and will incur in this matter;

G. Award Plaintiff pre- and post-judgment interest; and

H. Grant such further relief for the Plaintiff as justice requires.

## Verification

I, Clifford Joseph Conneighton, hereby verify under oath that the foregoing allegations are true and correct to the best of my knowledge and belief.

Dated: October 8, 2015               /s/ Clifford Joseph Conneighton
                                             Clifford Joseph Conneighton

PROVINCE OF BRITISH COLUMBIA
CITY OF VANCOUVER

Subscribed and sworn to on this 8th day of October, 2015.

                                         /s/ Brenda Balogh
                                         Justice of the Peace
                                         Notary Public
                                         My Commission Expires: ____NA____
                                         Brenda Balogh Notary Public
                                         130-1208 Homer Street
                                         Vancouver, B.C. V6B 2Y5
                                         604-685-1544
                                         Permanent Commission

Respectfully submitted,

**CLIFFORD JOSEPH CONNEIGHTON**

By his attorneys,

SHEEHAN PHINNEY BASS + GREEN
PROFESSIONAL ASSOCIATION

Date: October 9, 2015       By:     /s/ Courtney H.G. Herz
                                           Courtney H.G. Herz (NH Bar # 17114)
                                           Meghan S. Glynn (NH Bar # 21168)
                                           1000 Elm Street, PO Box 3701
                                           Manchester, NH 03105-3701
                                           Telephone: (603) 627-8131
                                           cherz@sheehan.com
                                           mglynn@sheehan.com